**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KEITH MYERS,  :<br>:<br>Plaintiff,  :<br>:<br>vs.  :<br>:<br>ADVANCED STORES COMPANY INC.  :<br>d/b/a ADVANCE AUTO PARTS and  :<br>JOHN DOES 1-5 AND 6-5.  :<br>:<br>Defendant.  : | Civil Action No.: 19-18183 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Plaintiff Keith Myers ("Plaintiff" or "Myers") alleges that his employer, defendant Advanced Stores Company, Inc. ("Defendant" or "Advanced Stores"), wrongfully terminated him in violation of the New Jersey Conscientious Employee Act ("CEPA") and public policy, because Plaintiff reported another employee for reporting to work while seemingly intoxicated and under the influence of an illicit substance. Defendant moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiff opposes the motion. For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Count Two and Three of Plaintiff's Complaint are dismissed.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of this motion, the Court assumes as true the relevant facts derived from Plaintiff's Complaint and the documents attached thereto.

This lawsuit stems from Plaintiff's employment as the General Manager of an Advance Stores location in West Long Branch, New Jersey. *See* ECF No. 1, Notice of Removal, Ex. A,

Compl. ¶¶2,5.  Plaintiff began working at Advance Stores in July 2017, and was promoted to regional manager one year later.  *Id*. at ¶7.  During his employment with Advance Stores, Plaintiff was allegedly "regularly commended for being a good manager and employee" and "received the Company's 'Blue Star Award' for being an excellent salesman."  *Id*. at ¶¶9-10.

Plaintiff alleges that while he was employed at Advance Stores, one of the sales associates he supervised, Kiersten Peterson ("Ms. Peterson"), exhibited symptoms consistent with alcohol and/or substance abuse.  *See id*. ¶¶11-15.  For example, customers complained to Plaintiff that Ms. Peterson smelled like alcohol, and in that regard, Plaintiff discovered liquor bottles hidden throughout the store and back room.  *Id*. at ¶¶12-13.  Plaintiff also allegedly witnessed Ms. Peterson drop a bottle of alcohol while walking by Plaintiff, and fall asleep at the register while counting money.  *Id*. at ¶¶14-15.  On several occasions, Plaintiff purportedly reported Ms. Peterson's conduct to his boss, Advanced Stores' District Manager, David Silverman ("Mr. Silverman").  *Id*. at ¶¶24-25.  In response, Mr. Silverman allegedly offered to obtain information on drug or substance abuse programs to aid Ms. Peterson, but to Plaintiff's knowledge, Mr. Silverman never took any action to address the issue.  *Id*. at ¶¶24-26.

Eventually, Plaintiff, concerned by Ms. Peterson's erratic behavior, requested that she submit to a drug test.  *Id*. at ¶16.  According to Plaintiff, she responded "you know I smoke marijuana every day" and offered to "go home and . . . get some clean urine."  *Id*. at ¶¶17-18.[1]

On November 10, 2018, other employees allegedly reported to Plaintiff that Ms. Peterson was "in a bad place."  *Id*. at ¶19.  Plaintiff personally witnessed Ms. Peterson falling asleep, slurring her words, and exhibiting poor physical control and coordination.  *Id*. at ¶20.  As a result, Plaintiff

---

[1]     Plaintiff's Complaint does not indicate whether a drug test was ever administered to Ms. Peterson.

requested that Ms. Peterson go home and he paid for an Uber to transport her home.  *Id*. at ¶21.

After the incident, Plaintiff called Mr. Silverman to explain what occurred and submitted a written

incident report.  *Id*. at ¶¶ 26-27.  Plaintiff also followed up on the conversation by writing a letter

to Mr. Silverman explaining his concerns about Ms. Peterson's potential substance abuse problem.

*Id*. at ¶29.

On November 14, 2018, a few days after he reported the incident regarding Ms. Peterson,

Defendant terminated Plaintiff's employment.  *Id*. at ¶30.  Plaintiff was informed that he was being

terminated for incorrectly inputting employee hours.  *Id*. at ¶31.

On August 5, 2019, Plaintiff filed the instant lawsuit against Defendant in New Jersey state

court alleging a violation of CEPA, N.J. Stat. Ann. § 34:19-1, and wrongful discharge in violation

of New Jersey public policy (Count Two)[2].  Plaintiff also seeks equitable relief in the form of

reinstatement, back pay, front pay, lost benefits, and attorney's fees (Count Three).  On September

20, 2019, Defendant removed the matter to this Court, and now, moves to dismiss Plaintiff's

Complaint.

## II.     STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim

upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss

on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224,

---

[2]      In their briefing, the parties construe Plaintiff's wrongful termination claim as a claim
pursuant to *Pierce v Ortho Pharmaceutical Corp*, 84 N.J. 58 (1980).  *See* ECF No. 7-1, Def. MTD
at 1, n.1; ECF No. 8, Pl. Br. at 8.

233 (3d Cir. 2008) (quotations omitted).  Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  The complaint must include "enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim.  The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted).  Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted).  Lastly, "when

there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

## III.   ANALYSIS

### A.  The CEPA Claim

CEPA "is remedial legislation that protects an employee from employer retaliation in cases where the employee 'blows the whistle' on illegal or unethical activity."  *Reynolds v. TCM Sweeping, Inc*., 340 F. Supp. 2d 541, 545 (D.N.J. 2004) (citing *Hernandez v. Montville Twp. Bd. of Educ*., 808 A.2d 128 (N.J. App. Div. 2002)).  In relevant part, the statute provides

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law;
>
> b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of a law, or a rule or regulation promulgated pursuant to law by the employer;
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
>> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law;
>> (2) is fraudulent or criminal; or
>> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J. Stat. Ann. § 34:19-3(c)[3].  Thus, to establish a cause of action under CEPA, a plaintiff must demonstrate that:

---

[3]      The Complaint does not specifically identify which section of CEPA forms the basis of Plaintiff's claim.  However, in *Higgins v. Pasack Valley Hospital*, 730 A.2d 327, 335 (N.J. 1999), the New Jersey Supreme Court found that employees who object to or report the misconduct of a

(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
(2) he or she performed a "whistle-blowing" activity described in [N.J. Stat. Ann. §] 34:19–3c;
(3) an adverse employment action was taken against him or her; and
(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003).

Here, Plaintiff alleges that Defendant retaliated against him for reporting Ms. Peterson's workplace intoxication and marijuana use to the Company's district manager, Mr. Silverman.  The parties' dispute largely concerns whether reporting the incidents involving Ms. Peterson constitutes whistle-blowing activity. Defendant contends that Plaintiff's "concerns about an employee's disruptiveness while at work, including that employee's inability to do her job, hiding or dropping alcohol bottles while at work, falling asleep at work, or slurring her words, [do] not involve a public harm," and thus, cannot form the basis for a CEPA claim.  Def. Br. at 15.  Rather, Defendant asserts that Plaintiff's objections to Ms. Peterson's workplace behavior were merely a personnel issue, which did not involve a violation of public policy, regulation, law or statute.  *Id*. Defendant analogizes the present case to other circumstances where courts have held that reporting conduct such as drinking alcoholic beverages during lunch or taking extended lunch breaks is not whistle-blowing activity and do not fall within CEPA's purview.  Def. Br. at 8-9 (citing *Battaglia v. United Parcel Service, Inc.,* 70 A.3d 602, 628 (N.J. 2013) and *Estate of Roach v. TRW, Inc*., 754 A.2d 544,552 (N.J. 2000)).

---

co-worker do not come within the purview of subsections (a) or (b), which both limit CEPA's application to policies, practices and activities "of" or "by" the employer.  Since Plaintiff only alleges misconduct by Ms. Peterson, a fellow employee -- not his employer —subsections (a) and (b) are not applicable, and Plaintiff's claims must be proceeding under subsection (c).

Plaintiff contends that his complaints to his supervisor constitute whistle-blowing activity because they involved Ms. Peterson's routine intoxication and daily drug use, while at work.  Pl. Br. at 6-8.  In that regard, Plaintiff argues that he possessed "the reasonable belief that [Ms.] Peterson being under the influence at work and in public was a violation of law or public policy in the State of New Jersey," specifically, the disorderly persons statute, N.J. Stat. Ann. § 2C:35-10(b).[4]  Compl. ¶¶22-23.  Plaintiff contends that the cases cited by Defendant are inapposite because they do not involve a circumstance where an employee reported "illegal criminal activity," Pl. Br. at 7, and it is "fundamental and well accepted that criminal acts cause substantial public and private harm," *id.* at 8.

On a motion to dismiss in a CEPA case, it is the Court's role to "make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff."  *Dzwonar*, 828 A.2d at 901; *see also Griffin v. Metromedia Energy, Inc.*, No. 10-3739, 2011 WL 12872504, at *3 (D.N.J. Feb. 7, 2011) ("To satisfy the first CEPA prong, [p]laintiff need not identify a particular law, regulation, or public policy as long as the court can identify the law or policy that might have been violated by the challenged conduct.").  While the complained-of conduct need not *actually* have resulted in any violation of law or public policy, "a plaintiff must set forth facts that would support an objectively reasonable belief that a violation has occurred."  *Dzwonar*, 828 A.2d at 901.

On this issue, Defendant's arguments focus on the non-existence of a public policy which substantially relates to Ms. Peterson's public intoxication, and ignores the issue of drug use.  While

---

[4]    N.J. Stat. Ann. § 2C:35-10(b) provides "[a]ny person who uses or who is under the influence of any controlled dangerous substance, or its analog, for a purpose other than the treatment of sickness or injury as lawfully prescribed or administered by a physician is a disorderly person."

the Court agrees that drinking at work would not generally implicate public policy concerns, the cases relied upon by Defendant, involve minor violations of corporate policies, rather than a potential criminal offense.  *See Battaglia*, 70 A.3d at 628, (finding that plaintiff's complaints regarding "other employees who were drinking at lunch or taking long lunch breaks" did not constitute protected activity under CEPA."); *Roach*, 754 A.2d at 552 (commenting that complaints about co-employees' extended lunch breaks or personal telephone calls at work would not be protected under CEPA).  Here, Plaintiff's complained of conduct, including possible drug use, could constitute a violation of the disorderly person statute.  That is sufficient.  The CEPA statute is written in the disjunctive; in order to allege a CEPA claim, Plaintiff need only allege facts demonstrating a violation of either public policy or statute -- not both.  *See* N.J. Stat. Ann. § 34:19-3(c) (plaintiff may not be subject to retaliatory action for objecting to an activity which he or she reasonably believes "is in violation of a law or a rule or regulation promulgated pursuant to law *or* is fraudulent or criminal; *or* is incompatible with a clear mandate of public policy." (emphasis added)).  Accordingly, Plaintiff is not required to allege that the conduct at issue also implicates public policy concerns.

Next, Defendant argues that Plaintiff has not alleged a good faith belief that Ms. Peterson violated N.J. Stat. Ann. § 2C:35-b, because the statute "clearly states that 'a controlled substance' is not 'a distilled spirit, wine, or malt beverage.'"  ECF No. 14, Def. Reply Br. at 4 n.2.  This argument is also unavailing.  As explained, *supra*, "'[a] plaintiff who brings a claim pursuant to N.J.S.A. 34:19–3c need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy. Instead, the plaintiff simply must show that he or she 'reasonably believes' that to be the case.'"  *Tegler v. Glob. Spectrum*, 291 F. Supp. 3d 565, 580 (D.N.J. 2018) (quoting *Dzwonar*, 828 A.2d at 901).  While "the trial court must identify a statute,

8

regulation, rule, or public policy that closely relates to the complained-of conduct," the plaintiff need not "allege facts that, if true, actually would violate that statute, rule, or public policy." *Id*.

Here, Plaintiff asserts facts suggesting that he believed Ms. Peterson was under the influence of both alcohol and/or marijuana. As Defendant correctly points out, being intoxicated at work would not violate the disorderly persons statute because that statute only applies to those who are under the influence of a controlled substance, which does not include a "distilled spirit, wine, or malt beverage." *See* N.J. Stat. Ann. § 2C:35-b.  As such, I find that Plaintiff may not allege a CEPA claim based solely on having reported Ms. Peterson's work place intoxication because the conduct at issue does not involve the violation of a statute, regulation, or public policy. However, Plaintiff has adequately alleged facts which suggest that he reasonably believed Ms. Peterson was in violation of the disorderly persons statute because she was under the influence of marijuana – a controlled substance.  Plaintiff specifically alleges that Ms. Peterson admitted to routine marijuana usage, and that Plaintiff and Mr. Silverman discussed enrolling Ms. Peterson in potential drug and substance abuse programs.  *See* Compl. ¶¶17, 25.  Accordingly, Plaintiff has adequately alleged that he engaged in whistleblowing activity by reporting that Ms. Peterson was under the influence of marijuana and may have been in violation of the disorderly persons statute.

Additionally, Defendant does not specifically take issue with the remaining elements of a CEPA claim: an adverse employment action and causation.  In any event, Plaintiff has sufficiently alleged facts supporting those elements, as well.  Plaintiff alleged that he was terminated, which constitutes an adverse employment action, and that termination occurred three days after Plaintiff reported Ms. Peterson's impaired behavior on November 10, 2018; such temporal proximity is sufficient to raise an inference of causation.  *See* N.J. Stat. Ann. § 34:19-2(e) (defining a "retaliatory action" under CEPA as "the discharge, suspension, or demotion of an employee, or

other adverse employment action taken against an employee in terms and conditions of employment."); *Maimone v. City of Atl. City,* 903 A.2d 1055, 1064 (N.J. 2006) ("The temporal proximity of employee conduct protected by CEPA and an adverse employment action is one circumstance that may support an inference of a causal connection.").

Accordingly, Plaintiff has alleged sufficient facts to support a CEPA claim, and Defendant's motion to dismiss Count One is denied.

### B.  The *Pierce* Claim

Defendant argues that Plaintiff's *Pierce* claim is subject to dismissal on two bases: first, Plaintiff's common-law *Pierce* claim is precluded under CEPA's waiver provision, Def. Br. at 10-12.; second, the *Pierce* claim, like his CEPA claim, fails to state a claim because Plaintiff has not alleged any actions that violated public policy, Def. Br. at 13-14.

In response, Plaintiff argues that the *Pierce* claim is an alternative to the CEPA claim and New Jersey law permits a plaintiff to plead alternative CEPA and *Pierce* claims together in a complaint, and elect which one to proceed at the time of trial.  Pl. Br. at 8.

First, I address the parties' waiver argument.  CEPA provides that "nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee ... except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law."  N.J. Stat. Ann. § 34:19–8.  Consistent with the statute's language, the Supreme Court of New Jersey has held that once a CEPA claim is instituted "any rights or claims for retaliatory discharge based on . . .  State law, whether its origin is the Legislature, the courts, the common law or rules of court; or regulations or decisions based on statutory authority, are all waived."  *Young v. Schering Corp.*, 660 A.2d 1153, 1160 (N.J. 1995).

The waiver "prevent[s] an employee from pursuing both statutory and common-law retaliatory discharge causes of action" because they "represent multiple or duplicative claims." *Id*. However, courts have generally held that "the CEPA waiver does not attach until after the completion of discovery," so that "plaintiff has a meaningful opportunity to gather facts and choose his remedy based on information." *Broad v. Home Depot U.S.A., Inc*., 16 F. Supp. 3d 413, 417 (D.N.J. 2014); *see McDevitt v. Borough of Clementon*, No. 18-17092, 2020 WL 468405, at \*6 (D.N.J. Jan. 28, 2020) ("courts in this district have held that 'the CEPA waiver does not attach until after the completion of discovery." (internal citations and quotation marks omitted)).

I find that, although, at this early phase of the case, Plaintiff would be permitted to pursue both his CEPA claim and common-law wrongful discharge claim as alternate theories, and elect between them at a later phase of the case, nonetheless, the *Pierce* claim must be dismissed because Plaintiff has not adequately alleged that he was discharged in violation of public policy. In *Pierce*, the New Jersey Supreme Court explained that an employee who is wrongfully discharged may maintain an action in tort "based upon the duty of an employer not to discharge an employee who refused to perform an act that is a violation of a clear mandate of public policy." 417 A.2d at 512. To establish a case for common law wrongful discharge, the employee must identify the clear mandate of public policy and that the discharge itself was in violation of that public policy. *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1183 (N.J. 2008). With respect to the first requirement, the New Jersey Supreme Court has also explained that "sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." *Pierce*, 417 A.2d at 512. Ultimately, "a 'clear mandate of public policy' must be one that on balance is beneficial to the public." *Hennessey v. Coastal Eagle Point Oil Co.*, 609 A.2d 11, 15 (N.J.1992).

Here, Plaintiff alleges that he was terminated for reporting to his supervisor that Ms. Peterson had arrived at work impaired, potentially violating the New Jersey disorderly persons statute. However, the Court is not convinced that merely alleging a potential violation of a criminal statute by a co-employee, alone, raises a public concern. To the extent the disorderly persons statue reflects a "clear mandate of public policy," it is meant to protect the *public* from the potential danger posed by individuals who are under the influence of controlled dangerous substances. It does not appear that Plaintiff's whistle-blowing activities served that purpose such that his termination would be contrary to public policy.

Indeed, courts have found that in certain limited circumstances an employee's complaints about another employee's intoxication or drug use may implicate public policy concerns where the employee's behavior poses a risk to public safety. *See Fischer v. G4S Secure Sols. USA, Inc.*, No. 10-6792, 2014 WL 2887803, at *14 (D.N.J. June 25, 2014), *aff'd*, 614 F. App'x 87 (3d Cir. 2015) (finding that plaintiff, an employee at a nuclear facility, engaged in protected whistle-blowing activity where he reported to management that another security officer at the facility appeared intoxicated because the disclosure "concerned a serious infraction with potentially major public safety implications."); *see Urbanski v. Twp. of Edison,* No. L-4201–09, 2014 WL 183966, at *6 (App. Div. Jan. 17, 2014) (holding that where plaintiff, a police officer, alleged that he complained to supervisors that his partner reported to work intoxicated, plaintiff adequately alleged whistleblowing activity because "[a] policeman who carries a gun and is assigned to traffic patrol, presents a serious risk to public safety if he is on the job while intoxicated"). As a general matter, absent such potential safety risks to the public at large, an employee's workplace intoxication does not implicate serious public policy concerns. Here, Plaintiff has not alleged that Ms. Peterson, while allegedly under the influence marijuana, posed a risk to public safety, or that there were any

12

public ramifications to her conduct such that Plaintiff's termination would constitute a violation of public policy.  Instead, Plaintiff reported incidents that only implicate an employee's conduct at a private business.

Accordingly, Plaintiff has not adequately alleged a *Pierce* wrongful discharge claim, and Count Two is dismissed without prejudice

### C.  Equitable Relief

Defendant asserts that if this Court dismisses Plaintiff's CEPA and *Pierce* claims, it should also dismiss Count Three, Plaintiff's request for equitable relief.  Def. Br. at 20.  While Defendant's arguments in that regard are unavailing, dismissal is, nonetheless, appropriate, because Plaintiff has improperly pled a request for equitable relief as a separate claim.  In Count Three, Plaintiff seeks a variety of equitable remedies including a declaration that Defendant violated New Jersey law; that Defendant "cease and desist all conduct inconsistent with the claims made herein going forward, both as to the specific plaintiff and as to all other individuals similarly situated"; that Defendant "alter their files so as to expunge any reference to which [sic] the Court finds violates the statutes implicated herein"; equitable reinstatement along with back pay, front pay, and lost wages; the payment of costs and attorney's fees.  Compl. ¶¶41-48.  However, the types of equitable relief sought by Plaintiff are remedies, not separate causes of action.  *See e.g.*, *Chruby v. Kowaleski*, 534 F. App'x. 156, 160 n.2 (3d Cir. 2013) ("We agree . . . that an injunction is a remedy rather than a cause of action, so a separate claim for injunctive relief is unnecessary."); *Neuss v. Rubi Rose, LLC*, No. 16-2339, 2017 WL 2367056, at *9 (D.N.J. May 31, 2017) (dismissing plaintiff's independent causes of action for injunctive and declaratory relief with prejudice because "injunctive and declaratory relief are remedies—not independent causes of action");  *Cox v. Chrysler Grp., LLC,* No. 14-7573, 2015 WL 5771400, at *11 (D.N.J. Sept. 30,

2015) (dismissing plaintiff's independent cause of action for "injunctive and equitable relief" but permitting plaintiff to pursue such relief as a remedy).  Accordingly, Count Three is dismissed because it is improperly styled as an independent cause of action, rather than a prayer for relief. Nevertheless, Plaintiff is permitted to pursue the sought after equitable relief as a remedy, in the event he is successful on his CEPA claim.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED IN PART AND GRANTED IN PART**.  Count Two of Plaintiff's Complaint, the common law wrongful discharge claim, and Count Three, the claim for equitable relief, are dismissed.

Date:  May 27, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge
